AMHERST HAYES *et al.*

*v.*

MARIA B. HAYES *et al.*

1. DOMICILE — *defined.* In a strict legal sense, the domicile of a person is where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. Actual residence is not indispensable to retain a domicile after it is once acquired, but is retained by the mere intention not to change it and adopt another.

2. SAME — *what necessary to a change.* To effect a change of domicile there must be an actual abandonment of the first, coupled with an intention not to return to it, and there must be a new one acquired, with actual residence in another jurisdiction, coupled with the intention of making the last acquired residence a permanent home.

3 A domicile in this State, within the meaning of the statute respecting the descent and distribution of personal property, is not lost or changed by the party residing in another State owing to domestic troubles, and by his voting in such other State when its laws authorize him to vote on a residence of six months, or by his purchasing property on speculation in such State, when there is no intention of making a final home there.

WRIT OF ERROR to the Circuit Court of Rock Island county; the Hon. G. W. PLEASANTS, Judge, presiding.

Mr. WILLIAM H. GEST, for the plaintiffs in error.

Messrs. CONNELLY & McNEAL, for the defendants in error.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This is a writ of error to the Rock Island circuit court, to reverse a decree entered therein on the chancery side of that court, in a proceeding commenced by bill on behalf of Amherst Hayes and others, claiming to be the heirs at law of the Rev. Harvey H. Hayes, deceased, and against his widow, Maria B. Hayes, who, with one Carlos L. Bascom, had taken out letters of administration on the estate of the decedent.

It appears by the bill that Dr. Hayes died on the 20th July, 1867, at Rock Island, leaving Maria B. Hayes, his widow, and no child or children, nor descendant of any child, and no parents. Letters of administration were granted by the county court of Rock Island county August 5, 1867. The bill alleges that deceased was a resident of the State of Iowa at the time of his death, within the view of the law of that State as to distribution of the personal estate of an intestate; that the appraisers have certified to the widow the sum of eighteen hundred and thirty-two dollars as the "widow's award," and complains that she claims the whole of the personal estate. The prayer of the bill is, that this award be set aside, and the whole surplus, after the debts are paid, may be distributed according to the law of Iowa.

An issue was made up on the question, where was the deceased domiciled at the time of his death, within the meaning of the law as to the distribution of the personalty. This issue was tried by the court, by consent, without a jury, and the court found that this State was the domicile of the deceased, so far as the succession to his personalty was concerned.

The plaintiffs in error insist that this finding is against the evidence.

We have given the testimony, voluminous as it is, a careful reading and full consideration, and have reached the conclusion it supports the decree.

It is said by authoritative text-writers, that the term "domicile," in its ordinary acceptation, means the place where a person lives or has his home. In a strict legal sense, that is properly the domicile of a person, where he has his true, fixed, permanent home and principal establishment, and to which, whenever he is absent, he has the intention of returning. Story's Confl. of Laws, 39, § 41. It is further said, actual residence is not indispensable to retain a domicile after it is once acquired; but it is retained, *animo solo,* by the mere intention not to change it and adopt another. Ib. 42, § 44.

Testing this case by these rules, the finding was clearly right. It is not denied that the domicile of Dr. Hayes, from 1852 to May, 1860, was Rock Island, at which time, there being some disagreement with his wife, she went from their home in Rock Island on a visit of uncertain duration to her relatives in Washington city, and he himself went to Bentonsport, in the State of Iowa, to supply a pulpit there for one year. Before he left Rock Island he rented the homestead and a part of the furniture, storing the balance on the premises. When the year expired he engaged for another year, which terminated in the spring of 1862, when he left, spending the spring and summer in visiting his wife in Washington and his friends in the East. In the fall of 1862 he returned to this State, visiting some of his relatives, and spent the winter with a brother, Gordon Hayes, living at Brighton, Iowa. In the spring of 1863 he accepted an invitation to supply a pulpit at Kossuth, Iowa, for one year, and after its expiration he renewed the engagement for another year, but neither at Bentonsport nor at Kossuth was he installed as pastor. Having some spare funds, he bought in Kossuth a house and lot, on speculation, in which he slept, taking his meals at a hotel. He

voted at the election in 1863, and at the presidential election in 1864, the laws of Iowa conferring the elective franchise on a resident for six months.  That the house was not purchased as a residence is clear from the testimony, it was an investment merely.

When his engagement at Kossuth closed, in the summer of 1865, he left that place and returned to Rock Island, staying there but a short time, and then proceeding to Washington city, where his wife remained engaged in keeping a boarding-house.  With the exception of about two months in 1866, which he spent at Rock Island, engaged in making repairs on his property there, he remained at Washington with his wife, until the last of June or first of July, 1867, when he returned to Rock Island, and staying but a short time, proceeded to Kossuth, collected the last payment due on the property he had there sold, and returned to Rock Island with his library and some other articles of property, and while there, on the twentieth of July, 1867, he made a sudden exit from this world.

At the time of his death he was the owner of several houses and lots in the city of Rock Island, and other real estate in other parts of the State.  His wife, the defendant in this suit, was at no time in Iowa, whilst her husband resided there; and after his death, closing up her affairs in Washington, she returned to the old homestead, where she has since remained.

There is a strong current running through all the mass of testimony tending to show it was never the intention of Dr. Hayes to make Iowa his home.  It is inferable he would have done so had his wife joined him there and been pleased with the place and prospects.  All his letters, and much of the testimony, go to show Iowa was not regarded by him as his home.  Nothing can be inferred from the fact of his having voted there; that act was consistent with his domicile in this State, the law of Iowa giving the right to a resident of six months.  He was such resident, undoubtedly, and as such had a right to vote.  This could, by no possibility, effect a change

of domicile. To effect a change of domicile there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence within another jurisdiction, coupled with the intention of making the last acquired residence a permanent home. Nothing of this is discernible in the testimony in this record. The case of *Smith* v. *The People*, 44 Ill. 16, may be referred to in support of this doctrine, and other cases cited. *Smith et al.* v. *Croom et al.* 7 Fla. 200; *Shaw* v. *Shaw*, 98 Mass. 158. But the doctrine does not need the citation of authorities in its support.

There can be no doubt that the unsettled condition of the deceased was in a great degree owing to domestic disturbances. The great bulk of his property was in Rock Island, and to that place his inclinations would naturally tend. To that his thoughts would revert, for it was his home, which he had never abandoned;

> " He still had hopes  - his long vexations past —
> There to return, and die at home at last;"

and his hope was accomplished.

It is conceded, domicile is a question of fact and intention. This is the proposition we have argued, and from the evidence we are satisfied Dr. Hayes had no fixed, permanent home in Iowa, nor any other home than Rock Island, and the circuit court in so finding found the truth, as we understand it. And the decree of that court must be affirmed. The domicile of succession to the estate of Dr. Hayes was in the State of Illinois at the time of his death.

*Decree affirmed.*