## Jane Thoms, Appellee, v. David Cumming Thoms, Appellant.

### Gen. No. 26,506.

1. DIVORCE—*what constitutes wilful desertion by husband.* Where a husband left his wife in New York with the declared intention of deserting her and came to Illinois where he has since lived, and there is no claim or proof that she was invited to accompany him here or that he even offered her a home in this State, there was a wilful desertion, begun in New York and completed in Illinois.

2. DOMICILE—*that of wife follows deserting husband for purpose of suit for divorce.* Where a husband leaves his wife in another jurisdiction with the intention of deserting her, and acquires a residence in this State, her domicile follows his for the purposes of a suit by her in this State for divorce.

3. DOMICILE—*right of wife entitled to divorce to acquire separate domicile.* A wife may, when entitled to have the marriage dissolved, establish a separate domicile.

4. CONFLICT OF LAWS—*presumption as to law of another State.* If the laws of New York are neither pleaded nor proven in a suit in this State, the court must presume that the common law obtains there if the common law is applicable, or that the statutes of New York are the same as in this State.

5. DIVORCE—*effect of separation contract upon award of alimony.* While contracts between husband and wife as to support for the wife upon separation may be enforced if not unfair or inequitable, where the evidence showed that the husband had an income of $6,000 a year and stocks, bonds and cash in value about $8,000, and that the wife had no means to support herself, an agreement by the husband to pay her $600 per annum was properly changed, upon awarding her a divorce for desertion, to alimony of $125 per month.

6. HUSBAND AND WIFE—*effect of breach of agreement for support on wife's right to alimony.*  Where a husband has breached an agreement for support of his wife from whom he has separated and it does not appear that he has made a complete tender of all that was due under the contract, the wife should be permitted in divorce proceedings to disregard the agreement and seek the usual way to compel the payment of alimony.

Appeal from the Circuit Court of Cook county; the Hon. GEORGE F. BARRETT, Judge, presiding.  Heard in the Branch Appellate Court at the October term, 1920.  Affirmed.  Opinion filed November 29, 1921.  Rehearing denied December 9, 1921.  *Certiorari* denied by Supreme Court (making opinion final).

ZIV, LEVIT & SILVERTRUST and F. S. LOOMIS, for appellant.

WOLSELEY & BALL and G. A. BURESH, for appellee.

MR. JUSTICE BARNES delivered the opinion of the court.

This is an appeal from a decree granting complainant (the wife of defendant) a divorce and alimony. The parties were married in Scotland in 1874.  On coming to America they lived in New York City until 1889, when defendant came west.  In 1901 he went back to New York where they resumed their marital relationship for a few days.  He then left New York and has never resided there since.  The wife has remained there up to the time of this suit together with their children.  In 1909 the parties entered into a contract for her support which will be referred to hereinafter.

The decree granted her a divorce and ordered appellant to pay for her support the sum of $125 a month commencing March 15, 1920, and $3,000 in full for her alimony from March 15, 1918, which was at the same rate per month, the latter date being the beginning of the term at which the suit was brought.

The first point urged is that the court had no jurisdiction because complainant was not a resident of this

county and State.  It is conceded that complainant never actually resided in Chicago; that she remained in New York with her children from the time of her husband's conceded desertion.  Appellee contends that complainant may, nevertheless, maintain her bill here under the doctrine that the domicile and residence of the husband is the domicile and residence of the wife.

When appellant left his wife in New York in 1901 it was with the declared intention of deserting her.  He returned to Chicago where he has since lived.  There is no claim or proof that she was invited to accompany him here or that he ever offered her a home or support in this State or the means of maintaining one here.  The desertion was wilful and began in New York and was completed in Illinois.

Upon a like state of jurisdictional facts it was said in the case of *Ashbaugh v. Ashbaugh,* 17 Ill. 476, after citing section 2 of the Divorce Act (Cahill's Ill. St. ch. 40, ¶ 3), that "in contemplation of law a husband and wife are one person, and her residence follows that of her husband."  The court went on to say, however, that if the statute had reference to actual residence only still the desertion occurred and became complete within the terms of the statute while the defendant resided in this State and therefore the bill should not have been dismissed.

We are, however, referred by appellant to the case of *Way v. Way,* 64 Ill. 406, where the court in construing section 2 of the Divorce Act with section 5 (Cahill's Ill. St. ch. 40, ¶ 6) which requires that the proceedings shall be had in the county where the complainant resides, said that residence of the party injured is essential to jurisdiction, thereby seeming to differ from the ruling in *Ashbaugh v. Ashbaugh, supra,* on the abstract statement that residence in the State is not required where the offense was committed within this State and the defendant was a resident thereof at the time of the filing of the bill.  What was

said in the *Way* case on that subject was with reference to an entirely different state of facts. That suit was brought by the husband and neither of the parties was a resident of this State. It appeared, too, that the husband had come to the county where the suit was brought only three or four days prior to commencement of the suit. No reference was made in the opinion to the previous decision of *Ashbaugh v. Ashbaugh*, which was an action brought by the wife against a resident husband who, as in the case at bar, had come here leaving her in a foreign jurisdiction with the intention of deserting her. What was said in the *Way* case, therefore, had no reference to such a state of facts and cannot, in our opinion, be regarded as intended to overrule the *Ashbaugh* case in applying thereto the doctrine that the wife's domicile follows that of her husband and entitles her to the standing of a resident therein, especially for the purpose of asserting and protecting her marital rights. In fact, it has been said by the Supreme Court in a later case, *Kenley v. Hudelson*, 99 Ill. 493: "There is no doubt that where questions in regard to a divorce arise under our statute in reference to a divorce, the domicile of the husband is the domicile of the wife, and the residence of the wife follows that of the husband." A different construction would require a deserted wife to become an actual resident of this State for one year before she could begin an action for divorce against a resident husband who abandons her in a foreign jurisdiction. The fact that a wife might be left there in utterly destitute circumstances without means of following her husband and maintaining herself in the place of his domicile for such period, and the fact that should she attempt to acquire such residence he might go elsewhere and thus successfully defeat her purpose and evade his obligations, suggest the unreasonableness of such construction of the statute.

It is true, as contended by appellant, that notwithstanding the general doctrine that the domicile of the husband is, by law, that of the wife, she may, when entitled to have the marriage relation dissolved, establish a separate domicile. And it is a recognized rule that she may establish a separate domicile whenever it is necessary for her to do so. (*Cheever v. Wilson,* 9 Wall. (U. S.) 108-124.) But as stated in the case just cited, the right springs from the necessity of its exercise. But there is nothing in the case at bar to indicate any affirmative action on the part of the wife to establish a different domicile from that of her husband. She from necessity simply remained where he left her,—destitute and with a family of young children without support.

We think, therefore, that under such circumstances the wife should not be denied the right to invoke the doctrine that her domicile follows her husband's residence so far as her right to maintain a suit to protect her marital rights is concerned. This doctrine is seemingly sustained by the great weight of authority, to which we need not refer in view of the decisions on the subject above cited.

It is also urged that she is precluded from claiming alimony because of her acceptance of an agreement for support entered into in 1909, in which the defendant is referred to as the party of the first part and she as the party of the second part. It recites that the first party agrees "for the purpose of enabling the party of the second part to separately support and maintain herself" to pay her $600 a year in semiannual payments of $300 each on January and July 15 of each year, and that "she accepts and takes the aforesaid payments and covenants in full payment, satisfaction and discharge of all claims and demands for her support and maintenance," and that the transaction and agreement shall be construed according to the laws of New York.

The laws of New York are neither pleaded nor proven. In the absence of any allegation or proof of what they are, the court must presume that the common law obtains in New York in a case where the common-law rule is applicable, or that the statutes and laws of New York are the same as in this State, where no such rule is applicable. (*Forsyth v. Barnes,* 228 Ill. 326; *Schlee v. Guckenheimer,* 179 Ill. 593.) Prior to the modification of the common law by the passage of the act of the General Assembly in 1861, it was held that a wife could not contract with her husband or a third party and such contracts were void. (*Sweeney v. Damron,* 47 Ill. 450; *Pike v. Baker,* 53 Ill. 163; *Forsyth v. Barnes, supra.*) The agreement, therefore, would have no binding force at common law.

But assuming that the laws of the State of New York are the same as those of this State on this question, can appellant defeat his wife's claim to alimony by virtue of a right to enforce such contract against her, or require it to be limited to the amount fixed in said agreement? We think it may be stated that on general principles such contracts, if not unfair and inequitable, in our State may be enforced. But as the evidence shows that appellant has received about $6,000 a year from his employment as salary, bonus, etc., has stocks and bonds and a bank account aggregating in value about $8,000, and that complainant had no means to support herself and was dependent entirely upon the money sent to her by appellant and what the children of their marriage gave her, and had been paying for her room and board alone during the two years prior to the entry of the decree the sum of $58 per month, we think the allowance made in the agreement for her support is not fair and equitable when considered with reference to his ability and duty to support her, and that alimony of $125 per month, as allowed in the decree, is not unreasonable in view of his circumstances.

But the evidence tends to show that defendant had breached the contract at the time of the trial. While appellee refused certain tenders of instalments not made in accordance with the agreement, and appellant later and at the time of the trial made a series of tenders, he does not appear at any time after default to have made a complete tender of all that was then due under the contract and, therefore, the agreement being no longer binding on the wife, she should be permitted to disregard it and seek the usual way to compel the payment of alimony. (*Hill v. Hill,* 190 Ill. App. 541; *Scheinkman v. Scheinkman,* 64 N. Y. Misc. 443.)

We think, therefore, the decree should be affirmed.

*Affirmed.*

GRIDLEY, P. J., and MORRILL, J., concur.